[Civ. No. 317. Third Appellate District.—January 19, 1909.]

## JOSEPH H. HOUSE, Respondent, v. R. A. McMULLEN, Appellant.

ACTION TO REFORM AND SPECIFICALLY ENFORCE CONTRACT TO SELL LANDS—MUTUAL MISTAKE—INTENTION OF PARTIES—SUFFICIENCY OF COMPLAINT.—A complaint seeking to reform a mutual contract to sell real estate, so as to make it a contract to exchange lands, and to insert a more particular description of the property to be exchanged, and to correct other terms thereof, on the alleged ground of the mutual mistake of the parties, fully set forth, whereby the writing does not express the intention of the parties, or the agreement which they actually made, and to specifically enforce the contract as reformed, states a sufficient cause of action, under sections 3399, 3401, and 3402 of the Civil Code, as well as under the authorities upon equity jurisprudence applicable thereto.

ID.—PROOF OF GROUNDS OF REFORMATION—PAROL EVIDENCE—STATUTE OF FRAUDS.—The grounds for the reformation of a contract, whether based upon mutual mistake or fraud of one of the parties, may be proved by parol evidence, notwithstanding the contract is one which by the statute of frauds is required to be in writing.

ID.—SUBJECT OF REFORMATION—AGREEMENT IMPERFECTLY EXPRESSED—UNTENABLE OBJECTION.—If the agreement as made, though imperfectly expressed, contains all the elements of a contract required by section 1550 of the Civil Code, a case for reformation thereof may be presented by proper allegations and proof, and the contention that the contract, because imperfectly expressed, cannot be made the subject of reformation, is untenable.

ID.—CONSTRUCTION OF COMPLAINT—AGREEMENT OF PARTIES.—*Held*, that the complaint is not obnoxious to the objection that it does not allege that the parties agreed to the matter alleged; but, upon a proper construction thereof, it appears by sufficient averment that

the parties agreed to the terms of the contract as established by the
trial court. An allegation that the parties entered into an agree-
ment, and that a certain provision is one of the covenants of the
agreement, is a sufficient allegation that they agreed to said pro-
vision; and the language of other covenants is such that anyone
with common understanding would infer therefrom that the parties
agreed to the contract as they intended and believed it to be written.

ID.—Matters Going to Construction of Contract—Use of Word
"Sell"—Identification of Property.—As to the meaning attached
to the word "sell" used by both parties, and as to the identification
of the property intended to be exchanged, these particulars involve
the construction or interpretation, and not the reformation, of the
contract. Under the rules prescribed for the interpretation of con-
tracts the plaintiff, upon an allegation that the contract was so
understood by the parties, could prove that "sale" was used for
"exchange," which is a species of sale; and so likewise will the
terms defining the property, which introduce no new element into
the contract, and may be made certain by the abstracts, which
must be presumed to contain all that is claimed by plaintiff.

ID.—Grounds for Reformation Shown by Enlargements and Ex-
cision.—The complaint as regards the enlargements and excision of
terms of the contract sufficiently shows that the enlargements were
omitted from the written agreement by error, mistake and un-
conscious forgetfulness of all the parties involved, and that each
of such provisions and covenants was one of the terms of the
contract between the plaintiff and defendant; and the excision is
sufficiently alleged to have been inserted by mutual mistake of the
parties and of a third party, and was part of another and distinct
contract for the sale of another piece of land, showing how it was
mistakenly inserted.

APPEAL from a judgment of the Superior Court of Fresno
County. H. Z. Austin, Judge.

The facts are stated in the opinion of the court.

Miles Wallace, and S. L. Strother, for Appellant.

N. C. Coldwell, for Respondent.

BURNETT, J.—The action was brought for the reforma-
tion of a written instrument and for specific performance.
From the judgment in favor of plaintiff defendant appealed
on the judgment-roll. The said instrument is in the following
words and figures:

"Fresno, Cal., Nov. 5, 1906.

"This agreement entered into by and between J. H. House, party of the first part, and R. A. McMullen, party of the second part; whereas, the party of the first part agrees to sell to the party of the second part the following described property, to wit: Lots 7 and 8 in block 64 known as the Demenlo, and the party of the second part agrees to sell and convey to J. H. House, party of the first part, property in Berkeley, situated on the corner of Dwight Way and Etna, number of house 2720 Etna street. The party of the second part agrees to assign that certain mortgage held by McMullen and due from Mrs. Graham, $5,920; certificate of title to the Berkeley property furnished by McMullen, also an abstract furnished by J. H. House. The said J. H. House agrees to purchase from McMullen, the furniture in the building 2720 Etna street, for the sum of $125.

(Signed)    "J. H. HOUSE.

"R. A. McMULLEN.

"Witness: A. S. BLAIR."

On the next day the following was written on the back of the instrument: "J. H. House hereby agrees to assume a certain mortgage on the Berkeley property of two thousand dollars, interest paid to Nov. 1st, 1906.

(Signed)    "J. H. HOUSE."

The only question before us is as to the ruling of the court upon the demurrer to the complaint, since it is admitted by appellant that the findings are a literal transcription of the allegations of the complaint, except in two immaterial instances, and that the judgment must be upheld if the objections to the complaint be not well taken.

The particulars wherein it was sought to revise the written agreement are, as stated by respondent: "First, to substitute the word 'exchange' for the word 'sell'; second, to insert a more particular description of the real property which is the subject matter of the contract; third, to strike out a certain term in the contract; and fourth, to insert a certain other term in the contract."

The ground upon which the reformation was sought is the mutual mistake of the parties whereby the said written instrument does not express their intention or the agreement actually entered into.

The cause, or rather the occasion, of the mistake, is fully set out in the complaint, which will sufficiently appear when we come to consider specifically the particulars in which the instrument was reformed.

The general principles of equitable cognizance involved in the determination of the question before us may be stated by making the following quotations from the code, from certain decisions and from Professor Pomeroy's great work on Equity Jurisprudence:

Section 3399 of the Civil Code provides that ''When through fraud or a mutual mistake of the parties . . . a written contract does not fully express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done without prejudice to rights acquired by third persons, in good faith and for value.'' Section 3401 is as follows: ''In revising a written instrument, the court may inquire what the instrument was intended to mean, and what were intended to be its legal consequences, and is not confined to the inquiry what the language of the instrument was intended to be.'' Section 3402 provides: ''A contract may be first revised and then specifically enforced.''

In the note to *Williams* v. *Hamilton,* reported in 65 Am. St. Rep. 501, the statement, supported by the citation of a large number of cases, is made that ''Notwithstanding some little diversity of opinion upon the subject, particularly with respect to executory contracts, it is clear that, in most of the cases, courts of equity reform contracts, both executed and executory, irrespective of the statute of frauds. In other words, the statute does not prevent a court from reforming the written evidence of a contract within the statute, by enlarging or restricting the terms or the subject matter of the contract, so as to make it express the real agreement whenever it is clearly shown that by reason of fraud or mistake, either the terms or the subject matter of the contract, as it was intended and understood by the parties to it, is not embraced in the writing . . . a contract required by the statute to be in writing can not, of course, be enforced, until it is in writing; but the statute does not interfere with the power of a court of equity to reform deeds or other instruments in which the parties intended to comply with the statute, but were prevented by fraud, accident or mistake.''

In the same note many cases are cited to the effect that "Deeds may be reformed in equity for fraud or mutual mistake, so as to effect the intention of the parties, and this may be done upon parol evidence, where the proof is clear, convincing and satisfactory. It makes no difference how the mistake originated, or whether the object of the reformation is to correct a misdescription, to include lands omitted by mistake, to enlarge or restrict the character of the estate, to insert or qualify covenants and conditions, or to correct in other respects.''

In 2 Pomeroy's Equity, section 845, we find this language: "In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. Among the ordinary examples of such errors are those as to the legal effect of a description of the subject matter, and as to the import of technical words and phrases, but the rule is not confined to these instances.''

In section 862 it is said: "The doctrine is well settled in the United States, that where the mistake or fraud in a written contract is such as admits the equitable remedy of reformation, parol evidence may be resorted to by the plaintiff in suits brought for a specific performance. The plaintiff in such a suit may allege and by parol evidence prove the mistake or fraud, and the modification in the written agreement made necessary thereby, and may obtain a decree for the specific enforcement of the agreement thus varied and corrected.''

In section 866 the author declares: "The doctrine in all its breadth and force is maintained by courts and jurists of the highest ability and authority, which hold that, whether the contract is executory or executed, the plaintiff may introduce parol evidence to show mistake or fraud whereby the written contract fails to express the actual agreement, and to prove the modifications necessary to be made, whether such variation consists in limiting the scope of the contract or in enlarging and extending it so as to embrace land or other subject matter which has been omitted through the fraud or mistake, and that he may then obtain a specific performance of the con-

tract thus varied, and such relief may be granted although the agreement is one which by the statute of frauds is required to be in writing. This view, in my opinion, is not only supported by the overwhelming preponderance of judicial authority, but is in complete accordance with the fundamental principles of equity jurisprudence. . . . No such relief, however, can be granted, either when the contract is executory or executed, and no parol evidence can be used to modify the terms of a written instrument, and most emphatically when that instrument is required by the statute of frauds to be in writing, except upon the occasion of mistake, surprise or fraud; one or the other of these incidents must be alleged and proved before a resort can be had to oral evidence in such cases. This is certainly the general rule, and the exceptions to it are more apparent than real.''

The same principles have been affirmed in various cases by the supreme court of this state. They are all in harmony with the declaration of Chief Justice Field in *Lestrade* v. *Barth*, 19 Cal. 672, that: ''The jurisdiction of courts of equity to correct an error in any material particular of a written agreement, either executory or executed, so as to make the instrument conform to the intention of the parties is well settled. And it matters not whether the error be in the insertion or omission of a material stipulation; or, as alleged in the present case, in an inaccurate description of the subject matter of the agreement. Nor does it make any difference whether the error be the result of fraud in one of the parties, or be committed under a mutual mistake, contrary to the intention of both parties.''

The foregoing quotations should set at rest the contention of appellant that the instrument in question here is ''so radically and materially deficient in certain elements required by the rules of the law to be contained in writings of its character'' that it cannot be made the subject of reformation so as to express a complete contract. But appellant is mistaken in his understanding of the significance of the writing before us, and he has placed an unwarranted limitation upon the operation of the equitable doctrine of reformation for fraud or mistake. The said instrument does contain, although imperfectly expressed, all the elements of a contract as required by section 1550 of the Civil Code, to wit: 1. ''Parties capable of contracting''—J. H. House and R. A. McMullen;

2. "Their consent"—"this agreement entered into"; 3. "A lawful object"—the sale of land; and 4. "A sufficient cause or consideration"—the mutual agreement to convey. So it is perfectly clear that a case for reformation is presented if we accept the rule as stated by respondent that "When contracting parties have given evidence of the existence of a contract between them, by signing a paper purporting to contain the terms of that contract and that paper shows their consent to a contract and that it has a lawful object and a consideration, and when such writing contains an indefinite or erroneous or insufficient statement of either the subject or consideration of the contract, equity will interpose for purpose of revision."

The rule, however, is thus stated by respondent more favorably to appellant than is warranted. The theory upon which equity interposes is that through mistake or fraud the written instrument does not set forth the contract actually entered into, and that justice requires that it should be made to express the intention of the parties. There is no hard-and-fast rule as to what the written instrument shall contain or in what respects it shall be deficient as a prerequisite to the invocation of equitable interposition. The written instrument is not required to be certain or complete in any respect. The only condition is that there shall be an honest endeavor to reduce the contract to writing where the statute of frauds requires it, and that the mistake shall be such as is recognized in this branch of equitable jurisdiction, as to which there can be no doubt here.

Certain cases are cited by appellant, which are deemed antagonistic to the foregoing doctrine, but a brief consideration will show that none of them is inconsistent with the overwhelming weight of authority as stated by Professor Pomeroy. In *Breckenridge* v. *Crocker,* 78 Cal. 529, [21 Pac. 179], the action was in law for damages for the breach of a contract of sale of real estate, and it was very properly held that "the contract must be complete and certain in its terms and the parties must have consented to the same subject matter in the same sense, and the burden is upon the plaintiff to show that a contract definite and certain in its terms was entered into between the parties as a condition of obtaining any relief."

In *Ward* v. *Waterman,* 85 Cal. 489, [24 Pac. 930], a declaration of trust was reformed by adding a provision not contained in the agreement as written on the ground that there was a mutual mistake, and that the instrument should embody what the parties had actually agreed upon.

*Van Slyke* v. *Broadway Ins. Co.,* 115 Cal. 644, [47 Pac. 689, 928], was not an action in equity, but it was brought to recover a sum of money for commissions upon a contract of agency, and it was properly held that parol evidence was not admissible to add to or vary the terms of the written instrument.

The case of *Mabb* v. *Merriam,* 129 Cal. 663, [62 Pac. 212], was an action to reform a contract, but it was brought by a person not a party to the written instrument and the supreme court said: "While a court of equity will reform contracts under many varying circumstances, still it has no power to make a new contract. Its power is simply to reform a contract already made. J. W. Mabb is not a party to the contract, and a court of equity can neither add additional parties nor substitute other parties for those already appearing upon the face of the writing."

*Craig* v. *Zelian,* 137 Cal. 105, [69 Pac. 853], was an action for damages for the breach of an agreement to convey real property. No question of fraud or mistake was involved, but an attempt was made by parol evidence to supply what the statute provides shall be in writing. It is properly said: "An agreement for the sale of real property must not only be in writing and subscribed by the party to be charged, but the writing must also contain such a description of the property agreed to be sold either in terms or by reference, that it can be ascertained without resort to parol evidence. Parol evidence may be resorted to for the purpose of identifying the description contained in the writing with its location upon the ground, but not for the purpose of ascertaining and locating the land about which the parties negotiated and supplying a description thereof which they have omitted from the writing." This is in harmony with the universally accepted rule as to the evidence of a contract contained in a written instrument and embodied in section 1856 of the Code of Civil Procedure as follows: "When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and there-

fore there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings,'' etc.

In view of the foregoing general observations it is easy to reach the conclusion that none of the changes made in the case at bar is beyond the domain and contemplation of the equitable principles to which we have referred.

A more technical objection to the complaint is urged by appellant to the effect that there is no specific allegation that the parties did agree to the terms of the contract as sought to be established. Appellant says: ''It is true that when a contract is sufficient to authorize a court of equity to revise it at all, it is the duty of the court to ascertain the intention of the parties and to carry that into effect. But it must be pleaded as a fact that the parties did agree on the matter alleged. The trouble is that while the complaint shows identical intentions, it does not show that they were ever communicated and accepted, which is necessary to legal agreements. A mere allegation that the parties intended that it should mean thus and so is not an allegation of any fact at all, and is wholly insufficient to admit parol evidence of what the facts underlying it were. (*Van Slyke* v. *Broadway Ins. Co.,* 115 Cal. 646, [47 Pac. 690, 928].)''

The rule is correctly stated, but the complaint before us is not obnoxious to the objection. It does appear by sufficient averment that the parties agreed to the terms of the contract as established by the trial court. This is apparent from a consideration of the whole complaint.

It is alleged ''that on the fifth day of November, 1906, the plaintiff and defendant made and entered into a certain contract and agreement in writing, which said contract and agreement was and is in the words and figures following, to wit: . . . that on the back of said written agreement there was on the sixth day of November, 1906, written the following: . . . and said words . . . were intended to be and in fact are one of the covenants and stipulations of said agreement.'' An allegation that the parties entered into an agreement and that a certain provision is one of the covenants and stipulations of said agreement is a sufficient allegation that they agreed to said provision.

Again it is alleged: "That at and before the making and execution of said written contract and of the indorsement thereon by the plaintiff, the plaintiff and the defendant intended that said instrument should mean and that the legal consequences should be"—(then follows the agreement as found by the court). In other words, the parties entered into a certain agreement which was erroneously expressed as signed by them, but which should have been expressed as found by the court. Anyone with common understanding would infer from this language that the parties agreed to the contract as they intended and believed it to be written.

But, again, as to the meaning attached to the word "sell" and the identification of the property agreed to be exchanged, these particulars involve the construction or interpretation and not the reformation of the contract, and after the allegation of the execution of the agreement it is sufficient to declare the meaning of the parties as to these terms employed in order that the intention may be more artificially and accurately expressed. Section 1636 of the Civil Code provides that "a contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Under this and the other rules prescribed for the interpretation of contracts there can be no doubt that plaintiff, upon an allegation that it was so understood by the parties, could prove that "sale" was used for "exchange," which is indeed a species of sale. So, likewise, with the terms defining the property. It cannot be said that any new element in that respect is introduced. If the specific description in the written contract should be deemed uncertain and defective, reference is made therein to the abstracts, which we must presume contained all that is claimed by respondent.

As far as the particulars which may be considered as enlargement of the written instrument are concerned, we find in reference to the loan to one Rose the allegation that it "was omitted from said written agreement by error, mistake and unconscious forgetfulness of all the parties to said instrument and of said Blair; that such provision and covenant was one of the terms of the contract between the plaintiff and the defendant," and there is the same allegation in reference to the discharge of the deed of trust to the Sacramento Bank.

9 Cal. App.—43

The one provision of which excision is sought is alleged to have been "inserted by mutual mistake of the parties and by error of the said A. S. Blair," and that it was in fact a part of another contract in reference to the sale of another piece of land. How it was mistakenly incorporated in the instrument in question is also fully explained.

There is no other point of sufficient importance to require specific attention.

The judgment is affirmed.

Chipman, P. J., and Hart, J., concurred.